■ In the Matter of the Claim of Reva Slotnick, Respondent, v Howard Stores Corp., et al., Appellants, and Special Disability Fund, Respondent. Workmen's Compensation Board, Respondent.—Appeal from a decision of the Workmen's Compensation Board, filed March 7, 1975, as amended by a decision, filed May 14, 1976, which affirmed awards of compensation for total disability from June 26, 1971 to October 2, 1971, and for death benefits thereafter. Decedent, district manager for Howard Stores Corp., was in charge of nine clothing stores in three boroughs of the City of New York. On June 25, 1971 decedent went to a store in Ridgewood, Queens. He arrived at 10:00 A.M. He left at about 11:30 A.M., stating, "I'll be right back." He never returned. He was found at about 3:00 P.M. on 14th Street in Manhattan, nude, with a beer can in his hand, a two-inch cut on his head and mentally unaware of his surroundings. He was hospitalized from June 25, 1971 to August 13, 1971 and for two short periods between August 27, 1971 to October 2, 1971 when he died. This appeal raises for review the questions: (1) whether an industrial accident occurred in the

course of decedent's employment, and (2) the causal relationship of that accident, if any, to decedent's disability and death. The bizarre facts of this case do not lend themselves to any findings bottomed on direct evidence. Between the time decedent left the store in Queens at about 11:00 or 11:30 A.M., to his discovery in Manhattan at about 3:00 P.M. on June 25, 1971, the only evidence of his activities is three telephone calls made by him from a public telephone booth. Two witnesses, decedent's daughter and the chief telephone operator at his employer's principal store in Manhattan, each testified that she received a call from decedent at about 11:30 A.M. In the call to the daughter he advised her he would pick her up at work at about 4:00 P.M. The telephone operator testified that he told her where he could be reached during the day. It is interesting to note that the telephone operator stated that the call to her concluded with a "groan or a moan, but that was all we heard. I couldn't get him back." Yet, this testimony has little, if any, probative value in establishing that claimant was "mugged" or met with any kind of accident at that hour since the record discloses that he telephoned his wife at about 12:00 P.M. and advised her that he was bringing their daughter home from work. He made no complaint to his wife. Evidence substantially proving that decedent met with an accident while in the course of his employment is unavailable without resort to postaccident medical examinations and resultant medical reports. Doctors Matis and Gould both testified that decedent's disability and death were not work-related. Doctors Boskey and Henry testified that during their hospital examinations of decedent he gave them a history of being mugged on June 25, 1971. Decedent's wife also stated that her husband told her, on June 25, 1971, when she visited him at the hospital, that he had been mugged. This proof, in the absence of any evidence to the contrary, substantially establishes that decedent met with an accident while in the course of employment which compelled his presence on the street during working hours. There is no evidence that decedent voluntarily conducted himself in a manner that removed him from the time and space limits of his employment (Matter of Sullivan v L'Heureaux, 18 AD2d 1116, mot for lv to app den 13 NY2d 595). We, therefore, conclude that there is substantial evidence in the record to prove that decedent was in the course of his employment at the time he sustained an unwitnessed accident, and that such accident together with the statutory presumption (Workmen's Compensation Law, § 21, subd 1) that said accident arose out of decedent's employment, not rebutted herein, inexorably leads to the conclusion that decedent sustained an industrial accident in the course of his employment. The issue of causal relationship of the injuries sustained to decedent's death is clearly a mixed medical question and such a factual issue is solely within the province of the board to decide. Decision affirmed, with costs to the Workmen's Compensation Board against the employer and its insurance carrier. Koreman, P. J., Greenblott and Mahoney, JJ., concur; Sweeney and Kane, JJ., dissent and vote to reverse in the following memorandum by Kane. J. Kane, J. (dissenting). We are unable to conclude that an award should be sustained on this record. Claimant's decedent left his employment and embarked upon what can only be explained as a purely personal pursuit when he left the company store and the company vehicle in Brooklyn. The telephone calls he made, and the subsequent discovery of claimant's decedent in the street, naked, with a can of beer in his hand and suffering from injuries consistent with a fall, in our view, constituted substantial evidence to overcome the presumption offered by subdivision 1 of section 21 of the Workmen's Compensation Law. Even if we were to accept the finding that decedent, as an

outside worker, was in the general course of his employment it would be stretching credulity to say that his injuries and ultimate demise arose out of that employment. Muggers do not usually provide their victims with beer after removing their clothes so that they may be discovered in that condition in midafternoon at a curb on 14th Street in Manhattan. The requisite substantial evidence is not present in this record, and the statutory presumption cannot be used as a substitute for proof *(Matter of Malacarne v City of Yonkers Parking Auth.,* 41 NY2d 189; *Matter of McCormack v National City Bank of N.Y.,* 303 NY 5; *Matter of Gruntler v Home Reader Serv.,* 19 AD2d 670). Accordingly, we vote to reverse and dismiss the claim.